IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

MISHA N. GHADIRI,

                Plaintiff,                      OPINION AND ORDER

WELLMARK, INC., d/b/a Wellmark                    20-cv-1078-wmc
Blue Cross Blue Shield,

                Involuntary Plaintiff,
  v.

THE MAIN STORE, INC., and WEST
BEND MUTUAL INSURANCE COMPANY,

                Defendants.
---

Plaintiff Misha N. Ghadiri asserts a product liability claim against The Main Store, Inc., arising out of an injury she sustained on August 9, 2018, while a passenger on a pontoon boat in Burenett, Wisconsin.[1] This case is set for a jury trial, commencing June 13, 2022. In advance of the final pretrial conference scheduled for June 2, 2022, the following opinion and order addresses defendant's motion to strike and untimely motion for summary judgment, as well as both parties' motions *in limine*.

---

[1] As indicated in the caption, Wellmark, Inc., d/b/a Wellmark Blue Cross Blue Shield, is named an involuntary plaintiff as a subrogated health care provider, and The Main Store, Inc.'s insurance carrier, West Bend Mutual Insurance Company, is named a co-defendant consistent with Wisconsin law. Nonetheless, the product liability claim is really between Ghadiri and The Main Store, Inc. As such, the court will simply refer to those parties and use the singular "plaintiff" and "defendant" for each.

OPINION

**I. Defendant's Motion to Strike Plaintiff's Liability Expert, Enlarge the Time for Dispositive Motions and for Summary Judgment (dkt. #35)**

At the preliminary pretrial conference ("PPTC") held on March 15, 2021, Magistrate Judge Crocker set January 3, 2022, as the deadline by which the parties were required to file dispositive motions. (Dkt. #20.) Plaintiff was also required to disclose her experts by November 1, 2021. (*Id.*) The parties agreed to an extension of the latter deadline, with plaintiff disclosing her experts and serving defendant with a report by Dennis Skogen dated December 1, 2021, approximately one month before the dispositive motion deadline. (Dkt. #66.)

For reasons that are not clear, defendant failed to file a motion for summary judgment by the January 3, 2022, deadline. In particular, defendant did not file a timely motion seeking judgment in its favor on the basis that plaintiff's expert is not qualified to render a decision on liability and his opinions are not reliable, and further that without an expert, plaintiff's product liability claim fails. Instead, defendant waited for the deadline for filing motions *in limine* to seek to strike the testimony of plaintiff's liability expert Skogen, and upon a favorable decision, for entry of summary judgment in its favor.[2] Of course, a party may wait until the motion *in limine* deadline to seek to strike expert testimony, but typically, a party simply seeks to narrow the scope of the testimony, and perhaps a claim or right to damages, rather than seeking summary judgment in its favor as

---

[2] In its reply brief, defendant contends that it should be excused from meeting the dispositive motion deadline of January 3, 2022, having waited until March 2022 to conduct Skogen's deposition, although defendant does not explain its failure to do so or to at least move for an extension of the summary judgment deadline for that purpose.

to the entire case. By waiting so close to the trial, the parties not only cram the motion into a very tight timeline for the court to issue a decision, but defendant ignores the actual deadline for such a motion while distracting from other pretrial preparations. As the parties have known since the PPTC held more than a year ago, this is not how case management works in this court.

Nonetheless, as perhaps defendant recognizes, the court will not inconvenience a jury trial if (1) plaintiff's expert is not qualified or his testimony is otherwise not reliable; *and* (2) expert testimony is required to prove plaintiff's claims. So, defendant effectively forces the court's hand in deciding an untimely motion for summary judgment. For the reasons described below, however, the court will deny defendant's motion to strike, thus mooting its untimely motion for summary judgment. Regardless, if in future cases a defendant believes it has a meritorious basis to exclude *all* of a plaintiff's expert's testimony, much less that this exclusion entitles it to summary judgment, it is well advised to do so sooner, and certainly not to ignore the court's dispositive motion deadline completely.

Turning to the merits of defendant's motion to strike, the admissibility of expert testimony in federal courts is governed principally by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

3

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

As "gatekeeper" under Rule 702, this court must determine whether a party's proffered expert testimony is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also United States v. Johnsted*, 30 F. Supp. 3d 814, 816 (W.D. Wis. 2013). More specifically, although expert testimony is "liberally admissible under the Federal Rules of Evidence," *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 723 (E.D. Wis. 2008), that testimony must satisfy the following, three-part test:

> (1) the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702;
>
> (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable, *Daubert*, 509 U.S. at 592-93; and
>
> (3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue, Fed. R. Evid. 702.

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

Here, Skogen has a B.S. and M.S. in Mechanical Engineering from the University of Wisconsin-Madison, and he has over 50 years of experience analyzing vehicle accidents, machine design and manufacturing issues. In its motion, defendant nevertheless contends that Skogen is not qualified to testify as an expert in this case because he lacks the necessary education, training or experience "in the area of pontoon gate and guard design, manufacture, or safety." (Def.'s Opening Br. (dkt. #36) 4.) However, courts, including the Seventh Circuit, have routinely rejected the kind of refined, specialized education or

experience defendant contends is required. *E.g.*, *Bannister v. Burton*, 636 F.3d 828, 832 (7th Cir. 2011) (trauma doctor was qualified to opine as to defendant's ability to throw a gun or crawl after he was shot based on his knowledge of anatomy, despite a lack of specialized expertise in biomechanics or orthopedics); *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (reversing exclusion of testimony simply because "the proposed expert does not have the specialization the [district] court considers most appropriate"); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995) (consulting engineer with experience in design of manufacturing plants qualified to testify as to problems with locating workers within "breathing zone" of fumes from hot glue pot, despite lacking formal education related to fume dispersal patterns or experience in performing or interpreting air quality studies).

Instead, while defendant is free to cross-examine Skogen about his lack of specific experience with pontoon boats (or with boats more generally), Skogen has more than sufficient education, training and experience in mechanical engineering and manufacturing design to offer opinions about the lack of appropriate guards at the pinch point in the Weeres Cadet 2000 SE pontoon boat under Rule 702 and the *Daubert* standard, including his experience following standard engineering practices and protocols. At most, defendant's challenge to Skogen's qualification to offer expert testimony about pinch points on a boat goes to the weight the jury should place on those opinions. *See Weir v. Crown Equip. Corp.*, 217 F.3d 453, 465 (7th Cir. 2000) (rejecting *Daubert* challenge when argument went to weight of opinion, not its admissibility).

Defendant also argues that Skogen's testimony should be excluded because his methodology is unreliable. Specifically, defendant contends that "[t]here was literally nothing scientific about it," pointing out that Skogen did not conduct research on industry or government guidelines or standards, similar accidents or literature relating to the use of ball guards on pontoon boats. (Def.'s Opening Br. (dkt. #36) 5.) In response, plaintiff points out that: (1) Skogen did not expect to find any applicable government standards, which plaintiff contends is factually correct; and (2) the presence of standards does not dictate the result of a strict liability claim. Moreover, plaintiff contends that Skogen *did* research manufacturing recalls, engineering reports on other claims involving ball guards, as well as reviewed a medical journal article about fifth finger amputations resulting from poor rail design and guarding. (Pl.'s Resp. (dkt. #63) 6; *see also* Skogen Rept. (dkt. #66) 4 (listing materials reviewed).) As for similar accidents, plaintiff contends that there is no reliable database on these type of accidents, and also points out that Skogen did review safety recalls for pontoon boats as listed in his report. (Skogen Rept. (dkt. #66) 4.)

Finally, defendant challenges the reliability of Skogen's testimony that a wedge guard would have prevented the injury, arguing that he merely "eyeballed a wedge guard and guessed that if a wedge guard had been in place on the gate there would not have been room for Ghadiri's finger to slide down past it." (Def.'s Opening Br. (dkt. #36) 5.) As plaintiff explained in her opposition brief, and as illustrated by Skogen's affidavit submitted in opposition to defendant's motion to strike, Skogen defends his reliance on an "eyeballed" assessment as "reasonable," rather than perform an exact measurement, in

6

concluding that Ghadiri's finger could neither get around nor enter the pinch point with a wedge guard in place. (*See* Skogen Dec., Ex. 1 (dkt. #59-1).)

Having rejected each of defendant's discrete challenges, Skogen appears to have conducted a standard product review in considering whether there was a foreseeable hazard and a reasonable alternative design to address that hazard. Thus, the court sees no basis to strike Skogen's testimony as unreliable, while leaving defendant's counsel free to cross-examine Skogen as they see fit. As such, this motion is DENIED.

## II. Plaintiff's Motions *In Limine* (dkt. #43)

### A. MIL No. 1: Barring evidence of collateral source payments

In this first motion *in limine* ("MIL"), plaintiff seeks to exclude evidence of collateral source payments -- namely, payments for medical bills paid by an insurance provider -- as inadmissible under Wisconsin's collateral source rule. (Pl.'s Br. (dkt. #44) (citing *Leitinger v. DBart, Inc.*, 2007 WI , 2007 WI 84, ¶ 28, 302 Wis. 2d 110. 736 N.W.2d 1).) In response, defendant does not oppose the motion absent plaintiff "opening the door" by introducing argument or evidence suggesting she was required to pay these bills herself. With this caveat, this motion is GRANTED AS UNOPPOSED.

### B. MIL No. 2: Barring any evidence of a prior lawsuit or settlement by Ghadiri

Plaintiff also seeks to exclude any evidence of Ghadiri bringing a past lawsuit or entering into a past settlement. Specifically, plaintiff seeks to exclude evidence of a lawsuit Ghadiri filed after being served a beverage contaminated with tap line cleaner, which

required her to seek medical attention. That lawsuit resulted in a settlement. Here, too, defendant does not oppose the motion, and it is GRANTED AS UNOPPOSED.

C. **MIL No. 3: Barring any evidence or argument on the fault, or lack thereof, of the defendant The Main Store, Inc, on the effect of the lawsuit or verdict on it**

Next, plaintiff seeks to exclude any evidence or argument regarding The Main Store's lack of negligence or other, direct fault for plaintiff's injury, as well as the effect of the lawsuit or a verdict may have on it or its insurer. As context, the manufacturer of the pontoon boat at issue, Weeres Industries, declared bankruptcy and went out of business between the time of boat's manufacture and the date of Ghadiri's injury. Under Wisconsin Statute § 895.047(2), defendant The Main Store agrees that it nevertheless stands in the shoes of the manufacturer in this case, rendering it liable to Ghadiri if she can prove that Weeres would have been strictly liable for her injury under § 895.047(1). (*See* Parties' Stip. (dkt. #18).) Plaintiff contends that The Main Store's position is, therefore, not relevant to any remaining claim in this case, and any reference to its lack of fault would be unfairly prejudicial to plaintiff and could confuse the jury.

In response, defendant contends that it does not oppose the motion to the extent that plaintiff is seeking: (1) to exclude evidence or argument about the impact of the verdict on defendant; and (2) to prevent defendant from arguing that the strict liability law is "not fair" or that The Main Store should not be held responsible for a boat it did not manufacturer. However, defendant opposes the motion to the extent that plaintiff is seeking to exclude any references to Weeres, and critically, the fact that Weeres failed to install proper guards when the boat at issue was manufactured.

8

Since the court does not understand plaintiff to be seeking to exclude any references to Weeres or to its failure to install guards, this motion is GRANTED AS UNOPPOSED, understanding that both parties may introduce evidence and argument concerning the manufacture of the boat and any installation of ball guards during or after manufacture. Indeed, the court is likely include an instruction for the jury to better understand why Weeres' strict liability is relevant. Among other things, the court will take this up at the final pretrial conference.

**D. MIL No. 4: Barring any testimony of David Martyn, or any representative of The Main Store, Inc., as it relates to "industry practice"**

Finally, plaintiff seeks to exclude defendant's expert, David Martyn, or any representatives of defendant from testifying about "industry practice," and more specifically, about whether other manufactures of pontoon boats used or did not use ball guards in their boats in 2009. For example, plaintiff points to a portion of Martyn's report, which states:

> S-E-A reviewed the pontoon boat manufacturer's industry practice for installing pinch guards on pontoon boat gates. S-E-A reviewed pontoon boat listings on www.boats.com and pontoon boat manufacturer/model information on www.iboats.com. According to S-E-A's review, the Weeres Cadet 200 pontoon boat was constructed during a period when some pontoon boat manufacturers transitioned to the inclusion of gate pinch guards on their boats. During the period from 2007 to 2013 (three model years before and after the subject pontoon boat was constructed), some manufacturers used wedge-type pinch guards, some used the ball-shaped guards, and some did not install any pinch guards. Figure 3 shows an example of the wedge-shaped pinch guards (from www.pontoonstuff.com).

9

(Biegert Decl., Ex. C (Martyn Rept.) (dkt. #50-3) 11.) Moreover, when pressed about this at his deposition, Martyn testified that there was a mix of different practices, and that "there was not just enough reliable information to come up with reliable data, other than to say there's a mix of practices." (Pl.'s Br. (dkt. #44) 5 (citing Biegert Decl., Ex. D (Martyn Dep.) (dkt. #50-4) 48-49).)

Plaintiff offers two grounds to exclude this testimony or any other, anecdotal testimony from defendant's representatives about the presence of guarding on pontoon boats manufactured around 2009. First, plaintiff contends that Martyn lacks an adequate foundation under Federal Rule of Evidence 703 to testify about *any* industry practice in 2009 regarding the use of wedge guards on boats. As defendant explains in opposition, and as plaintiff summarizes in her own brief, Martyn is cautious is describing *an* industry practice in 2009; rather, in reviewing information from websites for pontoon sales listings or pontoon manufacturer/model information, Martyn "deduced" that there was "a mix of practices" during the period between roughly 2007 and 2013. Still, while plaintiff may challenge whether Martyn's review of websites and manufacturing information was sufficiently exhaustive through cross examination or presentation of counter evidence, his testimony would appear to clear the foundation requirement under Rule 703 provided he can honestly testify that such a survey is something he would ordinarily rely upon in forming opinions as to industry practice.

Second, plaintiff argues that so-called "industry practice" evidence is not relevant to the elements of a strict product liability claim. In support, plaintiff cites *Murphy v. Columbus McKinnon Corp.*, 2021 WI App 61, ¶ 33, 399 Wis. 2d 18, 963 N.W.2d 836. As

an initial matter, the cited paragraph has *nothing* to do with the *admissibility or relevance* of industry practice or standards in pursuing a product liability claim. Moreover, in discussing industry standards, the court simply rejected the defendant's argument that the *plaintiff* "must introduce evidence of 'industry standards' on a topic of this kind in order to pursue a design defect claim under WIS. STAT. § 895.047." *Id.* ¶ 62. However, the court did *not* hold that industry standards were irrelevant to any of the factors under Wisconsin's "risk-utility" test for product liability claims.

For its part, defendant does not direct the court to any Wisconsin cases discussing the relevance of industry standards to a strict liability claim, but does point to cases decided under California law that, like Wisconsin, adopted the risk-utility balancing test as set forth in the Restatement (Third) of Torts. (Def.'s Opp'n (dkt. #58) 4.) Specifically, in *Linares v. Crown Equip. Corp.*, No. EDCV161637JGBKKX, 2017 WL 10403454, at *4 (C.D. Cal. Sept. 13, 2017), the district court, applying California law, concluded that evidence of industry customs or standards may be "relevant" under the risk-benefits test: "While not a complete defense, [such evidence] is not 'irrelevant,' but instead properly should be taken into account through expert testimony as part of the design defect balancing process." *Id.* at *4 (quoting *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 426 (2012)) (quotation marks omitted); *see also Kim v. Toyota Motor Corp.*, 6 Cal. 5th 21, 34, 424 P.3d 290, 298 (2018) ("[T]he court in *Howard* correctly observed that evidence of industry custom and practice sometimes does shed light not just on the reasonableness of the manufacturer's conduct in designing a product, but on the adequacy of the design itself.").

11

Still, given the lack of relevant Wisconsin law cited by either party, the court will RESERVE on this motion pending further argument at the final pretrial conference.

**III. Defendant's Motions *In Limine***

    **E. MIL No. 1: Bar plaintiff from eliciting irrelevant and prejudicial opinions from defendant's expert David Martyn**

In this motion, defendant seeks to exclude plaintiff from questioning its expert on four topics, each of which it contends are not relevant or would be unfairly prejudicial. *First*, defendant seeks to exclude any questioning about whether the pontoon would be defective and unreasonably dangerous if it were manufactured today. In support, defendant contends that a claim under § 895.047 requires "proof that the product was defective and unreasonably dangerous 'at the time it left the control of the manufacturer.'" (Def.'s Br. (dkt. #29) 3 (quoting Wis. Jury Instructions - Civil 3260.1).) In response, plaintiff acknowledges that the jury will be asked to determine whether the boat was defective and unreasonably dangerous in 2009, but contends that she should still be able to ask Martyn about this opinion because it highlights the lack of basis for him opining that the use of ball guards was not defective or unreasonably dangerous as used in 2009. More specifically, she argues that Martyn's *only* basis for contrasting the safety of the design in 2009 with the state of design in 2022 is a change in industry practices, thus opening the door to questioning.

While the court credits plaintiff's argument to an extent, defendant raises a legitimate concern that this line of questioning may confuse the jury. As such, the court will RESERVE on this portion of the motion pending discussion at the final pretrial

12

conference.  In advance, the parties may also submit a possible, curative instruction that the court could give to the jury to emphasize the liability question actually before it, as well as describing the possible relevance of any testimony about whether the boat would be unreasonably dangerous if manufactured in 2022.

*Second*, defendant seeks to exclude plaintiff from asking its expert whether an "entire industry standard" could be unreasonably dangerous.  At his deposition, Martyn testified that "an industry standard may hypothetically be unreasonably dangerous," but that he could not testify if that were the case here because of "insufficient data available to assess whether wedge guards are more effective than ball guards at preventing Ghadiri's type of injury."  (Def.'s Br. (dkt. #29) 4.)  In response, plaintiff contends that if the court grants its MIL No. 4, this would moot at least this portion of defendant's MIL No. 1.  Plaintiff also argues that even if Martyn is not allowed to testify about industry *standards*, he will be testifying about industry practices, and therefore, she should be able to challenge any of his testimony that the design was not defective or unreasonably dangerous because others were also using ball guards or others were not consistently using wedge guards, including by pointing out that others in the industry adopted defective or unreasonably dangerous manufacturing choices.  The court agrees with plaintiff that this line of questioning is appropriate, assuming that it ultimately denies plaintiff's MIL No. 4 and permits testimony regarding industry standards or practices in 2009.  As such, the court will RESERVE on this portion of the motion.

*Third*, defendant seeks to exclude any questioning of Martyn about whether "the subject pontoon was unreasonably dangerous because it was not one of the most expensive

13

pontoons on the market." (Def.'s Br. (dkt. #29) 5.) Plaintiff does not oppose this motion, but also asks that the defendant be similarly precluded from eliciting information regarding the price point of a Weeres pontoon boat compared to other manufacturers' pontoon boats. With this additional reasonable limitation included as well, this portion of the motion is GRANTED AS UNOPPOSED.[3]

*Fourth*, defendant seeks to exclude plaintiff from asking Martyn if he has any criticisms of wedge guards, reasoning that his opinion on this topic does not make it more or less likely that ball guards rendered the pontoon unreasonably dangerous. However, framing of the issue for the jury in this manner is too narrow. Specifically, in considering plaintiff's strict liability claim, the jury will be asked to consider whether the harm "could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer." (Pl.'s Opp'n (dkt. #61) 5 (quoting jury instructions).) As such, Martyn's opinion as to the safety of wedge guards *is* relevant to the question before the jury, to the extent he has one. As such, this portion of the motion is DENIED.

### F. MIL No. 2: Bar plaintiff from eliciting unqualified and speculative opinion testimony or other evidence from the owner of the pontoon at the time of the accident, William Whitmore

Defendant seeks to exclude any medical opinion testimony of William Whitmore. Whitmore was the original owner of the pontoon at issue, having purchased it in 2009 from The Main Store. Whitmore is also the now 90-year-old, grandfather of Ghadiri's

---

[3] Consistent with his report, plaintiff also points out that it intends to ask Skogen about the relative cost of wedge guards, arguing that this goes to whether the use of wedge guards constitutes a reasonable alternative design. The court does not view defendant's motion in limine as concerning this area of questioning, and therefore, offers no comment on whether such testimony is admissible.

14

erstwhile-girlfriend, as well as a retired orthopedic surgeon. Whitmore was not on the boat at the time of the accident, but met Ghadiri on the dock following the accident and saw her finger. Defendant seeks to exclude any expert testimony on the basis that he was not disclosed as an expert. In response, plaintiff contends that she does not intend to call Whitmore; at most, she may introduce some of his deposition testimony describing Ghadiri's injury without offering any medical opinion about the injury. Moreover, in its motion, defendant also indicated that it seeks to exclude a photograph that Whitmore took of his own pinky finger in the pinch point in an attempt to demonstrate how Ghadiri's hand was positioned when the accident happened. The court will await plaintiff's exhibit list and defendant's objections before ruling on any objection to this photo. As such, while allowing this testimony to be proffered, this motion is otherwise GRANTED AS UNOPPOSED.[4]

### G. MIL No. 3: Bar plaintiff from eliciting irrelevant and prejudicial testimony from the current owner of the pontoon, Shawn Madsen

Next, defendant seeks to exclude testimony from the pontoon boat's current owner, Shawn Madsen, about his unwillingness to allow an inspection of the boat, and also plaintiff's questions at Madsen's deposition implying that there was something about the boat that he was afraid to show. In addition, Madsen offered testimony about the plaintiff being litigious, at which point the exchange at his deposition became heated, and he stated that he was "pleading the fifth," whatever that means in the context of his deposition.

---

[4] To the extent defendant believes that Whitmore is offering a medical opinion in any designated deposition testimony, it may renew its objection at that time.

Understandably, defendant also seeks to exclude any reference to this exchange or any inference that Madsen believed he was incriminating himself if he answered questions.

In response, plaintiff explains that Madsen is the brother-in-law of the store manager of The Main Store, Brooke Johnson, and this connection, coupled with Johnson's deposition testimony, renders Madsen's testimony relevant. Specifically, Madsen, who plaintiff described as a hostile witness, eventually acknowledged that he could not corroborate Johnson's claim to have installed ball guards after the accident.

The parties' submissions as to Madsen are like ships passing in the night. As best as the court can discern, *defendant* does not seek to exclude Madsen's testimony about the presence of ball guards on the pontoon boat. As such, that topic remains open for exploration either in live testimony or in deposition designations. However, Madsen's testimony about his unwillingness to have the boat inspected, his comments about Ghadiri's litigiousness, or his "pleading the fifth" appears both to have *no* relevance and be unduly prejudicial. Moreover, since Madsen is listed as a "may call" witness on plaintiff's list, all of this may be moot. As such, the court will RESERVE on this motion pending further discussion at the final pretrial conference.

### H. MIL No. 4: Bar plaintiff from eliciting speculative opinions or opinions not previously disclosed from her treating physician, Dr. Fisher

Defendant also seeks to exclude certain testimony of Ghadiri's treating physician, Dr. Mark Fisher, as speculative. Fisher is not a retained expert, but he is expected to testify about his care and treatment of Ghadiri. During his deposition, Fisher testified that Ghadiri's pain may impact her ability to work, because the pain may make it difficult to

16

do things correctly, and it is "possible" that the pain impacts her ability to sleep. In his capacity as her treating physician, Fisher may testify about Ghadiri's symptoms and any reports she made to him about the injury's impact on her activities of daily living or if he formed a reasonable basis to assess those impacts while treating her. From plaintiff's response, it appears that she intends to call Fisher through deposition designations. As such, while this motion is generally DENIED, defendant is free to raise any objections it may still have in response to specific designations.

### I. MIL No. 5: Bar plaintiff from eliciting irrelevant and prejudicial testimony from The Main Store's manager, Brooke Johnson

Defendant further seeks to exclude two lines of questions posed to its store manager, Brooke Johnson. First, defendant seeks to exclude any testimony by Johnson about the fact that certain pontoon boat manufacturers have issued safety recalls relating to the risk of people getting their fingers caught in the pinch points of pontoon gates. Defendant contends that this is not relevant, since The Main Store did not sell any boats by manufacturers that had issued recalls, and therefore would not have received those recalls. Second, defendant seeks to exclude Johnson's testimony that The Main Store has done no "aftermarket guarding on any pontoons in its possession," on the basis that this would constitute a "subsequent remedial measure," an argument that makes no sense.

In response, plaintiff appears to concede that testimony about recalls is not appropriate, but argues generally that "after-market changes" may be material if the court allows in testimony about industry standards. Plaintiff also contends Johnson testified to personally installing ball guards on the pontoon at issue following the 2018 accident,

17

calling into question defendant's account of Johnson's testimony. Regardless, whether Johnson installed the ball guards is not necessarily material or may constitute a subsequent remedial measure, although the *absence* of any installations likely would not. Here, too, the court is having difficulty following either party's arguments. As such, the court will RESERVE on this motion pending further discussion at the final pretrial conference.

### J. MIL No. 6: Bar plaintiff from making unnecessary references to liability insurance generally or to defendant West Bend Mutual Insurance Company specifically after voir dire is complete

Finally, defendant seeks to exclude any reference to liability insurance generally or to co-defendant West Bend Mutual Insurance Company specifically, at least once voir dire is complete. Plaintiff opposes the motion on the basis that the jury should know who the parties are. On this point, defendant appears to agree that West Bend may be introduced as a co-defendant during voir dire. Still, West Bend is not at all material to the products liability claim at issue in this case. As such, any mention of West Bend as a party will be limited to voir dire. However, if defendant stresses the size of The Main Store or its status as a family business, defendant may open the door to plaintiff referring to defendant's insurance company as a co-defendant. Accordingly, this motion is GRANTED AS UNOPPOSED. To the extent the parties need further guidance, they may seek it at the final pretrial conference.

ORDER

IT IS ORDERED that:

1) Defendants The Main Store, Inc., and West Bend Mutual Insurance Company's motion to strike plaintiff's liability expert Dennis Skogen, enlarge time for dispositive motions and for summary judgment (dkt. #35) is DENIED.

2) Plaintiff Misha N. Ghadiri's motions *in limine* (dkt. #43) are GRANTED AS UNOPPOSED IN PART and RESERVED IN PART as set forth above.

3) Defendants' motions *in limine* (dkt. #28) are GRANTED IN PART, DENIED IN PART, and RESERVED IN PART as set forth above.

Entered this 1st day of June, 2022.

BY THE COURT:


/s/
_____
WILLIAM M. CONLEY
District Judge